

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

FILED

NOV 1 2 2008

CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

| | |
|---|---|
| JOSEPH ALLEN,<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL NO. 3:08CV293**

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Joseph Allen, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability (DIB) and Supplemental Security Income payments (SSI).  The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 9) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

judgment (docket entry no. 11) be GRANTED; and that the final decision of the Commissioner
be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on June 21, 2005, claiming disability due to
Lupus and a stroke. (R. at 67-69, 78, 81, 383-89.) Initially, the Plaintiff alleged that the
disability's onset date was May 5, 2004. (R. at 67.) This date was amended to August 25, 2005
to coincide with the date Mr. Allen began seeing a rheumatologist. (R. at 414-15.)   The Social
Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at
36-38, 43-45, 391-95, 397-99.) Plaintiff requested a hearing and on July 26, 2007, accompanied
by counsel, he testified before the ALJ. (R. at 407-47.) On August 29, 2007 the ALJ denied
Plaintiff's application, finding that he was not disabled under the Act because based on his age,
education, work experience and residual function capacity, there are jobs he could perform which
exist in significant numbers in the national economy. (R. at 26.) The Appeals Council
subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision
of the Commissioner subject to judicial review by this Court. (R. at 6-8.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by
substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state
government–the Disability Determination Services (DDS), a division of the Virginia Department of
Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also
§ 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted
by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d),

404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to his past relevant work[4] based on an assessment of the claimant's residual functional

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will

not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's

function is to pose hypothetical questions that accurately represent the claimant's RFC based on

all evidence on record and a fair description of all the claimant's impairments so that the VE can

offer testimony about any jobs existing in the national economy that the claimant can perform.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

<u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." <u>Id.</u> If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 16-17.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of mixed connective tissue disease, rheumatoid arthritis, lumbar spine degenerative disc disease, and bilateral knee problems with repeat left knee meniscal tears, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 17-18.) The ALJ next determined that Plaintiff had the RFC to perform sedentary and a partial range of light work, lifting up to 20 pounds occasionally and up to 10 pounds frequently, standing/walking for two to four hours in an eight hour day, and sitting for six to eight hours in an eight hour day. (R. at 18-19.) Additionally, from a nonexertional standpoint, the ALJ found that the Plaintiff would have to avoid exposure to heights and to moving machinery due to the effects of his pain and his seizure disorder. (R. at 19.) Finally, the ALJ noted that the Plaintiff "has pain that is noticeable to him at all times, but which is not severe enough to prevent him from attending to and carrying out his assigned work duties." (R. at 19.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a tractor trailer driver, or a machine maintenance person, due to the levels of exertion required, nor could he perform his past light work as an automobile detailer because

6

it required standing for up to 12 hours a day. (R. at 26.)  At step five, after considering Plaintiff's

age, education, work experience and RFC and after consulting a VE, the ALJ nevertheless found

that there are other occupations which exist in significant numbers in the national economy that

Plaintiff could perform. (R. at 26.)  Specifically, the ALJ found that Plaintiff could work as an

addresser, a small parts assembler, a production inspector, or as a ticket seller. (R. at 27.)

Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he

was not entitled to benefits.  (R. at 27.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the

alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot.

for Summ. J. at 1.)  In support of his position, Plaintiff argues that: (1) the ALJ erred by applying

an incorrect standard of law to the assessment of the medical advisor's testimony and opinions;

(2) that the ALJ erred by not affording the proper weight to the opinions of Plaintiff's treating

physician; and (3) that substantial evidence does not support the ALJ's conclusion that Plaintiff

is not disabled under the Act, because the ALJ improperly discounted Plaintiff's credibility. (Pl.'s

Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 11-21.)  Defendant argues that the

Commissioner's final decision is supported by substantial evidence and should be affirmed.

(Def.'s Mot. for Summ. J. and Br. in Supp. Thereof "Def.'s Mem." at 8.)

1.      **Plaintiff contends that the ALJ erred by applying an incorrect standard of law to the assessment of the medical expert's testimony.**

The Plaintiff contends that the ALJ applied an incorrect standard of law by affording

controlling weight to the testimony of the Medical Expert ("ME"). (Pl.'s Mem. at 11.)

Specifically, the Plaintiff contends that the ME used an improper standard for evaluating

Plaintiff's alleged medical impairments because he stated at the hearing that he was required to

only analyze the objective findings in making his medical determinations. (Pl.'s Mem. at 11.)

Plaintiff asserts that this restrictive analysis is improper, and as the ALJ afforded the ME's

opinion controlling weight, the ALJ adopted an improper standard in determining Plaintiff's

RFC. (Pl.'s Mem. at 11.)

In conducting an RFC analysis, the ALJ is responsible for considering all "relevant

evidence in [the claimant's] case record." 20 C.F.R. § § 416.945(a)(1), 416.946(c).  The RFC

analysis consists of a two step process where the ALJ is to: (1) determine whether there is an

underlying medically determinable physical or mental ailment that could reasonably be expected

to produce the claimant's symptoms; and then (2) the ALJ is to evaluate the intensity, persistence

and limiting effects of claimant's symptoms to determine how these limitations would effect the

claimant's ability to engage in work related activities.  20 C.F.R. § 404.1529; SSR 96-7p;  Craig

v. Chater, 76 F.3d 585, 594 (4th Cir.1996).  In step two of this analysis, the Social Security

Administration has dictated that the ALJ must consider not only relative objective medical

evidence, but subjective evidence that supports or contradicts a claimant's complaints of pain.

See SSR 96-7p; Hines v. Barnhart, 453 F.3d 559, 563-65 (4th Cir.  2006).  The Fourth Circuit

has clarified this analysis, stating that a claimant's subjective allegations as to their pain or

personal limitations cannot be "'discredited solely because they are not substantiated by objective

evidence.'" Gowans v. Astrue, No. SKG-06-2817, 2008 WL 179479, *11 (D. Md. Jan. 17,

2008) (citing Hines v. Barnhart, 453 F.3d at 565).  However, the Court also noted that a

claimant's subjective complaints need not be accepted by the ALJ "'to the extent that they are

inconsistent with the available evidence.'" Id.  Thus, a proper RFC determination considers all

objective and subjective evidence presented, and analyzes the credibility of the information based on all information contained in the Record.

Here, the ALJ applied the appropriate standard, considering both objective medical evidence and the Plaintiff's subjective complaints of pain when making his RFC determination. The ALJ's opinion presents a thorough review of all of the medical data, the Plaintiff's complaints of pain and limitations, as well as the opinions of the experts. Although the ALJ did find that the Medical Expert's opinion as to Plaintiff's condition was more credible then the Plaintiff's subjective complaints of pain, the Record clearly demonstrates that the ALJ considered all of the evidence before making his determination.  In his opinion, the ALJ discussed at length the Plaintiff's daily routine and activities. (R. at 20-21.)  He noted that Plaintiff was still working as a part time pastor and would preach on Sundays, but that Plaintiff testified that he did things at a slower pace and even had days where it was difficult to get out of bed. (R. at 20.)  The ALJ also considered Plaintiff's testimony as to the side effects of his medication, his ability to do housework, and his ability to cook and care for himself.  (R. at 20.) The ALJ's extensive review of Plaintiff's subjective complaints of pain and his limitations did not conclude simply with Plaintiff's testimony, but included a review of statements made by Plaintiff's wife, mother-in-law and a church elder, all of whom had described their observations about Plaintiff's condition.  (R. at 20-21.)

In reviewing the subjective testimony presented by Plaintiff, the ALJ analyzed the testimony in relation to Plaintiff's extensive medical records and the objective testimony presented by the Medical Expert.  (R. at 21-25.)  The ALJ outlined the Plaintiff's medical history, finding that much of the objective medical evidence was inconsistent with the extent of the pain

alleged by the Plaintiff. (R. at 21.)  For example, the ALJ found that many of Plaintiff's complaints of pain diminished when he was on the appropriate medicinal regimen. (R. at 23.)  A review of the Record supports such a finding, as the medical records include several notes by Plaintiff's treating physicians of the progress he was making while taking Arava, and the reduced pain Plaintiff experienced as a result of his continuously and properly taking the medication.  (R. at 240, 295, 301.)

Additionally, the ALJ found that many of the objective medical tests, including those administered by Plaintiff's treating physician, did not support or substantiate Plaintiff's complaints of pain. (R. at 21, 25.)  Many of the x-rays, CT-scans and other medical tests had insignificant results and did not reveal any known medical source for the extensive pain Plaintiff alleged.  (R. at 21-25.)  At the hearing, the ALJ confirmed such findings by calling on a Medical Expert ("ME") to explain the objective medical evidence.  After explaining the Plaintiff's various conditions, and the effects that they could have on his employment, the ME testified that "the [Plaintiff's] testimony appears . . . to be a little more severe then what appears in the medical records." (R. at 441.)  The ME also explained that he did not agree with the RFC analysis of Plaintiff's treating physician because it was based primarily on the Plaintiff's subjective complaints, and not on the objective medical evidence. (R. at 438.)  The ALJ considered such testimony, along with the Plaintiff's testimony and all of the medical records presented, and found that Plaintiff was capable of performing sedentary and a partial range of light work.  (R. at 18-19.)

The ALJ thoroughly reviewed all of the evidence presented at the hearing, and explained in his analysis his consideration of the subjective and objective testimony that had been

10

presented.  Although the ALJ relied on the testimony of the ME, whose opinions were based on

the medical records, the ALJ first considered all subjective and objective factors before reaching

his conclusions.  As such, Plaintiff's claim that the ALJ adopted an inappropriate or illegal

standard in conducting his analysis is without merit.

2.      **Plaintiff contends that the ALJ erred by not affording the Plaintiff's treating physician's opinions controlling weight.**

        Plaintiff contends that the ALJ did not assign proper weight to one of his treating

physician's (Dr. Coutlakis) opinions, contending that greater weight should have been given

because there is no persuasive contrary evidence which contradicts the physician's opinions.

(Pl.'s Mem. at 14.)  Specifically, the Plaintiff believes that more weight should have been

afforded to Dr. Coutlakis' opinion that the Plaintiff "would be unable to work more than two or

three days in a row and no more than four hours in any give day."(Pl.'s Mem. at 13, 13 n.4.)

        During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments which would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence resulting

from consultative examinations or medical expert evaluation that have been ordered.  See 20

C.F.R. § 416.912(f).  When the record contains a number of different medical opinions, including

those from the Plaintiff's treating physicians, consultive examiners, or other sources that are

consistent with each other, then the ALJ makes a determination based on that evidence.  See 20

C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with each

other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight

to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the applicable

regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

   The ALJ concluded that Dr. Coutlakis' medical opinion should only be afforded moderate weight, finding it "inconsistent with other substantial evidence in the record." (R. at 25.) In making the determination, the ALJ found that Dr. Coutlakis' opinions were inconsistent with his own progress notes, and the ALJ further found that the medical records and the testimony of the ME contradicted Dr. Coutlakis' opinions. (R. at 25.) The ALJ explained that in Dr. Coutlakis' progress notes, he had described Plaintiff's degenerative disc disease as "minimal" and that he had continually generated notes that recorded Plaintiff's symptoms improving with the use of proper medication. (R. at 25.) The record supports this conclusion, as many of Dr. Coutlakis' progress reports note that Plaintiff experienced diminished pain when he was continuously taking his medication. (R. at 240, 295, 301.) Additionally, Dr. Coutlakis recorded that the use of Plaintiff's new medication allowed him to be "weaned off" of his steroids prescription - progress that Dr. Coutlakis was "excited" about. (R. at 294.) Plaintiff, himself, even told Dr. Coutlakis that the medication was having a positive effect, and, at one point, the Arava medication was

12

discontinued because Plaintiff was doing well. (R. at 338.)  Consistent with such developments, Dr. Coutlakis made a note at that time confirming that "Arava did help."  (R. at 338.)  Given such progress notes, which Plaintiff admits "tend to demonstrate that Arava 'helped'" the Plaintiff, it was reasonable to for the ALJ to conclude that Dr. Coutlakis' RFC determination was internally inconsistent with his earlier progress notes.

The ALJ's determination to give moderate weight to Plaintiff's treating physician was also supported by the ME's testimony at the ALJ hearing.  The ME testified at the hearing that while Plaintiff's subjective complaints "fall within the reasonable bounds of what could be expected from his condition," his opinion was that the Plaintiff's complaints were "a little more severe then what appears in the medical records."  (R. at 441.)  The ME additionally stated that he disagreed with Dr. Coutlakis' RFC determination because he believed that it was based primarily upon subjective complaints, and not objective medical evidence.  (R. at 438.)

Given the contradictions between Plaintiff's treating physician's progress notes and his opinions as to Plaintiff's RFC, and given the testimony of the ME, it appears that there was sufficient evidence for the ALJ to determine that Dr. Coutlakis' opinion was inconsistent with the other evidence in the record.  Accordingly, this Court recommends a finding that the ALJ's decision to afford moderate weight to Dr. Coutlakis' opinions is supported by substantial evidence.

3.     **Plaintiff contends that substantial evidence does not support the ALJ's conclusion because the ALJ improperly discounted Plaintiff's credibility.**

Finally, Plaintiff asserts that the ALJ's determination as to Plaintiff's credibility was unsupported by substantial evidence and was based upon an improper evaluation standard.  (Pl.'s Mem. at 16.)  Specifically, Plaintiff claims that the ALJ misconstrued the statements Plaintiff

13

made as to his daily activities and that the ALJ improperly relied solely on objective medical evidence in the assessment of Mr. Allen's credibility. (Pl.'s Mem. at 19, 21.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

14

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of his subjective complaints of pain and limitations as a result of his injuries, Plaintiff testified that he is regularly in pain or feels stiffness in his body, and will sometimes spend whole days in bed. (R. at 419, 425.) Plaintiff was asked to describe his ability to walk and sit, and he stated that he could walk approximately fifty yards on a flat surface before he became short winded, and could sit about two hours at one time. (R. at 427.) Plaintiff also testified that he spent most of his days at home alone, and although he was able to take care of his personal needs and prepare basic breakfasts and lunches for himself, he spent a significant portion of his day just sitting or napping. (R. at 420, 424.) Plaintiff stated that

15

much of the napping was a result of stiffness and pain throughout his body, but that it also could

be attributed to the side effects of his medication which would make him sleepy, and sometimes

dizzy. (R. at 424.)

  As discussed earlier, it is clear that the ALJ did a thorough analysis of both the subjective

and objective medical evidence presented to him in making his determinations as to Plaintiff's

credibility and RFC. The ALJ found that the "claimant's medically determinable impairments

could reasonably be expected to produce some of the alleged symptoms, but that the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible. (R. at 21.) Specifically, the ALJ concluded that Plaintiff's daily activities were

inconsistent with the amount of pain he allegedly experienced. (R. at 21.) At the hearing,

Plaintiff stated that he was able to prepare and deliver sermons each week, was able to take of his

personal needs by himself, and, up until he suffered a knee injury several months earlier, was

able to drive. (R. at 420-21, 423.) Additionally, Plaintiff had reported on a function report that

he has continuous paperwork and makes telephone calls throughout the day as part of his

responsibilities as a pastor. (R. at 97.) Plaintiff argues that his statements about his daily

activities were taken out of context and mischaracterized by the ALJ. (Pl.'s Mem. at 19.)

However, it is clear from a review of the hearing transcript and the record that the ALJ did not

analyze these statements out of context, but instead analyzed them comparatively, finding that

the Plaintiff's complaints as to his pain and physical limitations were inconsistent with his

testimony about his daily activities.

  In addition to considering Plaintiff's testimony and complaints, the ALJ also considered

the medical records and evidence presented at the hearing. As discussed herein, the ALJ found

that the objective medical evidence did not "overcome the Administrative Law Judge's doubts" about Plaintiff's reported limitations. (R. at 21.) The ALJ also conducted a thorough review of Plaintiff's medical history, examining each alleged symptom and condition and the corresponding medical history. (R. at 21-25.) The ALJ noted during his analysis that many of the medical tests conducted had minimal or insignificant results, and that Plaintiff's treating physician's progress notes indicated that a proper medicinal regiment alleviated many of Plaintiff's symptoms. (R. at 21-25.) Considering all of this information, including the objective medical evidence and Plaintiff's subjective complaints, the ALJ concluded that the Plaintiff's allegations were only partially credible, and that Plaintiff does retain some capacity to perform certain types of work activity. (R. at 25.)

The ALJ performed the required <u>Craig</u> analysis and provided an explicit rationale to support his conclusions. The ALJ found that the Plaintiff had the severe impairments of mixed connective tissue disease, rheumatoid arthritis, lumbar spine degenerative disc disease, and bilateral knee problems with repeat left knee miniscal tears, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ found that while these impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible. (R. at 21.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of his pain was less then credible. The record additionally indicates that the ALJ's opinions were based on the medical evidence before him, and that the ALJ did not misconstrue Plaintiff's testimony in reaching his conclusions.

17

Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC are based on substantial evidence in the record and should not be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 9) be DENIED; that Defendant's motion for summary judgment (docket entry no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a _de novo_ review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
_____
Dennis W. Dohnal
United States Magistrate Judge

Date: NOV 1 2 2008
Richmond, Virginia